**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
MARTINSBURG**

**DION RENE DREW,**

       Petitioner,

v.

                        **CIVIL ACTION NO. 3:09-CV-59
CRIMINAL ACTION NO. 3:05-CR-70
(BAILEY)**

**UNITED STATES OF AMERICA,**

       Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

I.    <u>Introduction</u>

On this day, the above-styled matter came before the Court for consideration of the Report and Recommendation of United States Magistrate Judge David J. Joel. By Local Rule, this action was referred to Magistrate Judge Joel for submission of a proposed report and a recommendation ("R&R"). Magistrate Judge Joel filed his R&R on January 6, 2011 [Crim. Doc. 152 / Civ. Doc. 6].

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); ***Snyder v.***

1

*Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); ***United States v. Schronce***, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Joel's R&R were due within fourteen (14) days of receipt, pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. On January 25, 2011, however, this Court granted the petitioner an extension until February 25, 2011 [Crim. Doc. 156]. On February 25, 2011, the petitioner timely filed his Objections to the R&R [Crim. Doc. 158]. Accordingly, this Court will undertake a *de novo* review of those portions of the magistrate judge's findings to which objection is made. The Court will review the remainder of the R&R for clear error.

II.     Factual and Procedural History

        A.     Search, Arrest, Criminal Complaint, Detention

On September 26, 2005, a Charles Town Police Department ("CTPD") confidential informant ("CI") advised that an African-American male known as "D" was staying in room number 67at the Towne House Motor Lodge located in Charles Town, West Virginia. The CI further advised that he or she had been present in the room earlier that morning and had witnessed "D" with two automatic handguns and ammunition. Based upon this information, a detective with the CTPD obtained a warrant from a state magistrate to search the motel room.

Shortly thereafter, officers from the CTPD, assisted by special agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF") and Deputy United States Marshal Mike Ulrich, executed the search warrant. During the search, the petitioner was removed from the motel room and taken to the CTPD for questioning. The petitioner told the officers that he did not object to the search because he had no illegal items in his possession. Similarly, the petitioner consented to the search of his rental car. Finally, the petitioner told the

officers that he was a convicted felon on probation for distribution of crack cocaine.

A subsequent search of the motel room uncovered two plastic bags of six individually packaged pieces of suspected crack cocaine in a black duffel bag belonging to the petitioner. The same duffel bag also contained a handgun magazine with seven rounds of ammunition, $1,101.00 in cash, small plastic bags, a digital scale, a razor blade, and a mirror showing white residue. In the petitioner's rental car, the officers found a handgun under the driver's side seat. A criminal history check revealed that the petitioner was sentenced to five years probation for manufacturing and distributing controlled substances on November 30, 2000. Based upon this evidence, the officers arrested the petitioner without a warrant and contacted the United States Attorney's Office to prepare a criminal complaint and arrest warrant. On the same day, a criminal complaint was prepared and an arrest warrant was issued [Crim. Docs. 1 & 10].

On September 27, 2005, the petitioner appeared before Magistrate Judge David J. Joel for his initial appearance [Crim. Doc. 3]. At the hearing, the petitioner requested court-appointed counsel and completed a financial affidavit [Crim. Doc. 4]. The Federal Public Defender's Office was appointed to represent the petitioner [Crim. Doc. 7]. The Government moved for a detention hearing for which it requested three days to prepare [Crim. Doc. 5]. The magistrate judge granted the motion and ordered that a detention hearing be held on September 29, 2005, which would also serve as a preliminary hearing on the arrest warrant. The petitioner was remanded into the custody of the United States Marshal.

On September 29, 2005, the magistrate judge found probable cause to bind the petitioner's case over for grand jury consideration and found justification for the petitioner's

continued detention [Crim. Docs. 8, 9, & 11].

B.     Indictment through Sentencing

1.     Indictment, Arrest, Arraignment

On October 13, 2005, the petitioner was named in a three-count indictment [Crim. Doc. 12].   Count One charges the petitioner with possession with intent to distribute approximately 3.8 grams or more of crack cocaine.  (Id. at 1).   Counts Two and Three charge the petitioner with possession of a firearm in furtherance of drug trafficking and with being a felon in possession, respectively.  (Id. at 2-3).  The next day, a second arrest warrant was issued commanding the United States Marshal to bring the petitioner before the magistrate judge to answer the charges in the Indictment [Crim. Doc. 14].  The second arrest warrant was executed on October 18, 2005, and the petitioner was arraigned on October 26, 2005 [Crim. Docs. 15 & 16].

2.     Petitioner's Pre-Trial Motions

At the February 21, 2006, pretrial conference, the petitioner's newly retained counsel indicated for the first time that he would be filing motions challenging the validity of the arrest and search warrants [Crim. Doc. 61].  Later that day, the petitioner moved to dismiss the Indictment because: (1) he was never served with the second arrest warrant, (2) he was never afforded an initial appearance or detention hearing, and (3) he was never afforded a preliminary hearing.  ([Crim. Doc. 38] at ¶¶ 10-12).  The next day, the petitioner moved the Court to allow him to challenge the validity of the state-issued search warrant because it was executed in connection with a federal crime.  ([Crim. Doc. 40] at 4).

On February 23, 2006, and February 24, 2006, the Government responded to the petitioner's motions [Crim. Docs. 41 & 42].   In response to the petitioner's motion to

dismiss, the Government argued that the second arrest warrant was served on the petitioner, the petitioner had already been afforded an initial appearance and detention hearing upon his warrantless arrest, and no preliminary hearing was required after indictment. ([Crim. Doc. 41] at 9-10). The Government also argued that the state-issued search warrant is not invalid simply because the officers decided to invoke federal jurisdiction after the search. ([Crim. Doc. 42] at 5-7).

On March 2, 2006, the Court held a status conference to discuss the status of any plea negotiations. ([Crim. Doc. 48-1] at 1). The Court also indicated that it would take the petitioner's motions under advisement and issue a ruling prior to the trial date. (Id. at 2).

### 3. Trial and Post-Trial Motions

On March 7, 2006, the above-styled criminal matter came before the Court for jury selection and trial. ([Crim. Doc. 63] at 1). Prior to administering the oath to the jury, the Court denied the petitioner's motion to dismiss for reasons placed on the record at the hearing. (Id.). After jury selection, the Government presented evidence in support of its case. (Id.). At the close of the Government's case, the petitioner moved for a judgment of acquittal, which the Court denied. (Id.). On the same day, the Court instructed the jury as to the controlling law of the case, and counsel presented closing arguments. (Id.). After deliberations, the jury found the petitioner guilty of all three counts in the Indictment. (Id. at 1-2). The Court then set deadlines for post-trial motions and ordered that a post-trial hearing be held on April 10, 2006. (Id. at 2-3). On the day after trial, the Court entered an Order denying the petitioner's motion to challenge the validity of the search warrant [Crim. Doc. 62].

On April 11, 2006, the Court entered an Order denying the petitioner's motion to set

aside the jury verdict, motion for judgment of acquittal, motion for arraignment on Count Three, and motion for new trial for reasons placed on the record at the post-trial motions hearing. ([Crim. Doc. 68] at 1). The Court further ordered that the United States Probation Officer prepare and submit a presentence investigation report by June 12, 2006, and set the petitioner's sentencing for June 26, 2006. (Id. at 1-2).

4.     Sentencing

On June 26, 2006, the petitioner was sentenced to 211 months imprisonment, consisting of 151 months on Count One and 120 months on Count Three, to be served concurrently, and 60 months on Count Two, to be served consecutively to Count One. ([Crim. Doc. 75] at 2). The Court also ordered that the petitioner be placed on supervised release upon his release from imprisonment for three years on Counts One, Two, and Three, to be served concurrently. (Id. at 3).

C.     Direct Appeal

On June 27, 2006, the petitioner filed a Notice of Appeal [Crim. Doc. 73] for which the United States Court of Appeals for the Fourth Circuit appointed the petitioner counsel [Crim. Doc. 81]. The petitioner's appellate counsel filed a brief pursuant to **Anders v. California**, 286 U.S. 738, 744 (1967), stating that there were no meritorious issues for appeal, but suggesting that this Court erred in denying the petitioner's motion to dismiss the indictment, erred in denying the petitioner's motion to challenge the validity of the search warrant, and erred in sentencing the petitioner. The petitioner filed a *pro se* supplemental brief questioning whether this Court erred in determining the drug quantities attributable to him, whether this Court erred in failing to differentiate between crack cocaine and cocaine base, and whether this Court erred in refusing the petitioner's request for

6

additional *voir dire*.

On November 19, 2007, the Fourth Circuit affirmed the petitioner's convictions and sentence. First, the Fourth Circuit found that this Court did not err in denying the petitioner's motion to dismiss the Indictment because he was never personally served with the initial arrest warrant. In so finding, the Fourth Circuit noted that "[the petitioner] was properly arrested without a warrant upon the discovery of a weapon by agents of the Bureau of Alcohol, Tobacco, and Firearms, and [his] admission that he is a convicted felon. A warrant was only issued later as [the petitioner] was being processed by the United States Marshals Service." ([Crim. Doc. 92] at 2-3). "Moreover," the Court continued, "the record makes clear that [the petitioner] received all the process he was due." (Id. at 3).

Second, the Fourth Circuit found that this Court properly denied the petitioner's motion to challenge the validity of the search warrant. The Court rejected the petitioner's argument that it is inappropriate for federal officials to rely on a state-issued search warrant, noting that the Court had "previously approved of the use of evidence seized pursuant to a state search warrant in a federal prosecution." (Id. at 3).

Third, the Fourth Circuit upheld the petitioner's sentence as reasonable, finding no clear error in this Court's factual findings regarding the amount of drugs attributable to the petitioner. In this regard, the Fourth Circuit also rejected the petitioner's argument that this Court should have distinguished between cocaine base and crack cocaine because the terms are "interchangeable" under **United States v. Ramos**, 462 F.3d 329, 334 (4th Cir.), *cert. denied*, 127 S.Ct. 697 (2006). (Id. at 5).

Finally, the Fourth Circuit found that this Court did not err by failing to ask additional questions regarding racial prejudice during *voir dire*. In particular, the Fourth Circuit

7

concluded that "no specific inquiry into potential racial bias was required" because "racial issues were not 'inextricably bound up with the conduct of the trial[.]'" (Id. at 5) (quoting **United States v. Barber**, 80 F.3d 964, 968 (4th Cir. 1996)).

The petitioner filed for a writ of *certiorari* with the United States Supreme Court which was denied on October 20, 2008.

On March 30, 2009, this Court reduced the petitioner's term of imprisonment on Count One from 151 months to 121 months based upon the retroactive 2007 crack guideline amendments [Crim. Docs. 111-112].

D.     Collateral Attack

On September 4, 2009, the petitioner filed a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("Original Petition") [Crim. Doc. 130 / Civ. Doc. 1].  The petitioner alleges five (5) grounds in support of his § 2255 petition, namely that: (1) his right to a presumption of innocence was violated when he was forced to select a jury and proceed to trial dressed in jail clothing covered only with a blue blazer; (2) the Government violated its statutory and constitutional duty to disclose information that could have affected his decision whether to plead guilty or proceed to trial; (3) his Indictment was constructively amended by evidence adduced at trial suggesting the petitioner possessed a firearm during a "crime of violence," instead of that he possessed a firearm during a drug trafficking crime, as the Indictment charged; (4) his trial counsel was ineffective; and (5) his appellate counsel was ineffective.  As relief, the petitioner requests that he be granted an evidentiary hearing and any other relief deemed just or proper.

On October 8, 2009, the Government responded that each of the petitioner's grounds for relief, except one, is procedurally barred because they were not raised on

8

direct appeal ([Crim. Doc. 139] at 12-13). The other, regarding the amount of drugs attributable to the petitioner, was raised and rejected on appeal. (Id. at 13). On October 26, 2009, the petitioner replied that his claims were not raised on appeal because of his appellate counsel's ineffective assistance of counsel [Crim. Doc. 141]. In addition, the petitioner requests an evidentiary hearing and the appointment of counsel to represent his interests at the evidentiary hearing.

On January 6, 2011, the magistrate judge entered his R&R [Crim. Doc. 152 / Civ. Doc. 6], recommending that this Court deny and dismiss without prejudice the petitioner's the § 2255 petition. As a result, the magistrate also recommended that the petitioner's requests for an evidentiary hearing and appointment of counsel be denied as moot. After receiving a 30-day extension [Crim. Doc. 156], the petitioner filed his Objections [Crim. Doc. 158] to the R&R on February 25, 2011.

III.    Discussion

In his Objections, the petitioner takes issue with the analysis of the magistrate judge. The Court will address these objections as they relate to each of the petitioner's arguments for relief discussed above.

### A.    Grounds 1 through 3: Procedurally Barred Claims

In his petition, the petitioner argues that his right to a presumption of innocence was violated when he was forced to select a jury and proceed to trial dressed in jail clothing covered only in a blue blazer; (2) the Government violated its statutory and constitutional duty to disclose information that could have affected his decision whether to plead guilty or proceed to trial; and (3) his Indictment was constructively amended by evidence adduced at trial suggesting that he possessed a firearm during a "crime of violence." In the R&R,

the magistrate judge rejected the petitioner's arguments, finding that his claims were procedurally barred. The petitioner objects.

"In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack." *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999). "The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim or a denial of effective assistance of counsel." *Id.* To establish ineffective assistance of counsel, the petitioner must establish that (1) counsel's conduct fell below an objective standard of reasonableness and (2) the petitioner was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1964).

### 1. Trial Attire

First, the petitioner argues that cause exists for his procedural default regarding a challenge to his trial attire. Specifically, the petitioner argues that his trial counsel was ineffective for failing to object, and his appellate counsel was ineffective for filing only an *Anders* brief, stating that there were no meritorious issues. This Court disagrees.

Like the magistrate judge, this Court notes that the petitioner had an opportunity on direct appeal to file his own *pro se* supplemental appellate brief and did, raising three issues in addition to the three raised by appellate counsel. Though presented with that opportunity, the petitioner failed to challenge his trial attire. As such, even assuming trial and appellate counsel were ineffective, the petitioner cannot show that he was actually

10

prejudiced in light of his own failure to raise the issue in his *pro se* supplemental appellate brief. As such, the petitioner has failed to establish cause for his procedural default in failing to challenge his trial attire on direct appeal. Accordingly, the petitioner is now precluded from raising that claim in his collateral attack.

### 2.    Government's Failure to Disclose

Next, the petitioner argues that cause exists for his procedural default regarding a challenge to the Government's failure to disclose the investigating officer's narrative which the petitioner alleges shows he made a controlled purchase from a confidential informant. In particular, the petitioner asserts that his appellate counsel was ineffective for failing to raise the issue on direct appeal. This Court disagrees.

The petitioner has established neither that his appellate counsel's conduct was unreasonable nor that he was prejudiced by his appellate counsel's failure to raise the issue of the Government's failure to disclose on appeal. With regard to reasonableness, the investigating officer's narrative was, in fact, disclosed to the petitioner before trial. Even if not, the narrative contains no evidence with exculpatory relevance to the petitioner because it describes a controlled purchase from another individual, not the petitioner. As for prejudice, this Court again notes that the petitioner had the opportunity to raise this issue in his *pro se* supplemental appellate brief. As such, the petitioner has failed to establish cause for his procedural default. Accordingly, the petitioner is now precluded from raising this claim in his collateral attack.

### 3.    Constructive Amendment of Indictment

Finally, the petitioner argues that cause exists for his procedural default regarding a challenge to the Government's alleged constructive amendment of his Indictment in the

form of trial testimony that he possessed a firearm during the commission of a violent offense (armed robbery of a Government witness) instead of a drug trafficking offense. Again, the petitioner alleges that his appellate counsel was ineffective for failing to raise the issue on appeal. This Court disagrees.

As with his first two grounds, the petitioner has failed to show actual prejudice because he could have raised this claim himself in his *pro se* supplemental appellate brief. Equally important, however, the petitioner cannot argue that his appellate counsel acted unreasonably in failing to raise the issue on appeal because the record clearly reflects that no constructive amendment of his Indictment occurred. In determining the petitioner's guilt on Count Two (Possession of a Firearm in Furtherance of Drug Trafficking), the Court instructed the jury to "consider the numerous ways in which a firearm might further or advance drug trafficking." ([Crim. Doc. 65] at 21). The jury was therefore free to consider testimony that the petitioner robbed a Government witness to protect his drug business as evidence that the petitioner used a firearm to further drug trafficking. As such, the petitioner has failed to establish cause for his procedural default. Accordingly, the petitioner is now precluded from raising this claim in his collateral attack.

### B.    Ground 4: Ineffective Assistance of Trial Counsel

In his petition, the petitioner argues that his trial counsel was ineffective. In the R&R, the magistrate judge rejected the petitioner's arguments. The petitioner objects.

The Court will now consider each of the petitioner's seven (7) claims to determine whether he has demonstrated that: (1) counsel's conduct fell below an objective standard of reasonableness and (2) the petitioner was prejudiced by counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1964).

12

### 1.     Failure to Deliver on Opening Statement

First, the petitioner argues that his counsel was ineffective for failing to deliver on

the following promise made in his opening statement:

> You will also hear testimony from his mother, Ms. Davis. She will come. And she will tell you about her son, things that only a mother can talk about. Being a hotel room with two women. He was there for, I call it romance. There is no evidence whatsoever that's been presented or will be presented today that ties Mr. Drew to the actual drugs, to the gun, to the magazine. That's what I want you to look at.

([Crim. Doc. 83] at 51). The petitioner argues that when counsel failed to call his mother

to testify on his behalf, the jury was left with the false impression that his "own mother

would not come to his defense." ([Crim. Doc. 130-1] at 6). In an affidavit, the petitioner's

mother states that she did not appear to testify because counsel failed to inform her of the

trial date. (See Id. at 7-8). The petitioner argues that counsel's failure to ensure that his

mother appeared to testify constitutes ineffective assistance. This Court disagrees.

A review of the trial record clearly contradicts the petitioner's argument that his

mother's failure to appear is attributable to counsel's failure to inform her of the trial date.

First, counsel listed the petitioner's mother as a character witness on the witness list he

filed on March 2, 2006. (See [Crim. Doc. 45] at 1). In fact, the petitioner's mother was the

only witness listed by counsel. (Id.). Clearly, counsel fully expected the petitioner's mother

to testify. Second, the following exchange during the Rule 29 motion period of trial reflects

that an unawareness of the trial date was unlikely the cause of her failure to appear:

> THE COURT: So it is a Rule 29 motion for judgment of acquittal. Are there any other points that I have not - - ?
>
> [DEFENSE COUNSEL]: No other points, Judge. And my witness - -
>
> THE COURT: I think you're going to the weight of the evidence - -

[DEFENSE COUNSEL]: Yeah. Yeah. My witness is not here, Judge. So, we don't have anyone.

[The Government rebuts defense counsel's argument for a judgment of acquittal]

THE COURT: That's, at least in this point in time, how I see it. So, we do have your witness available . . . ?

[DEFENSE COUNSEL]: No, Judge, we don't. We don't have a witness available. She is not here and I'm not going to hold the Court up any further.

THE COURT: That's okay. But it wasn't drop service, was it?

[DEFENSE COUNSEL]: No, Judge, this is his mom.

THE COURT: His mother?

[DEFENSE COUNSEL]: Ms. Davis. Janice Davis is his mother. There's [sic] some problems there, Judge, which I won't go into. But - - so we have no - - we have no witness to call on behalf of the defense.

([Crim. Doc. 83] at 228-229). As this exchange reflects, the more plausible explanation for why the petitioner's mother failed to appear to testify is that there were "some problems" in their relationship, not because counsel failed to inform her of the trial date.

Even assuming that counsel's conduct was unreasonable, the petitioner has failed to establish prejudice. The two women who were present in the motel room with the petitioner testified at trial that they were there to purchase crack cocaine. (See [Crim. Doc. 83] at 210-213, 218-220). Neither woman testified that they were in the petitioner's motel room for "romance," as described by defense counsel. Moreover, the physical evidence, as outlined by the magistrate judge in his R&R, overwhelmingly supports the women's account. (See [Crim. Doc. 152 / Civ. Doc. 6] at 22). As such, the testimony of the petitioner's mother would have unlikely made any difference in the outcome of trial.

Accordingly, the petitioner has failed to establish an ineffective assistance of counsel

claim based upon counsel's failure to deliver on the promise in his opening statement.

### 2.    Failure to Stipulate to, or Move to Sever, Felon in Possession Charge

Second, the petitioner argues that his counsel was ineffective for failing to stipulate to, or move to sever, his felon in possession charge.  In particular, the petitioner argues that introduction of the nature of his prior felony drug conviction "inflam[ed] the jury [to believe] that [he] had that propensity to commit drug crimes."  ([Crim. Doc. 141] at 6).  This Court disagrees.

Even assuming that counsel's conduct was unreasonable, the petitioner has failed to establish prejudice.  On this point, this Court agrees with the magistrate judge who noted: "The record reveals that the testimony and evidence introduced through eight different witnesses who interacted with petitioner incident [to] his drug trafficking, as well as that of four law enforcement officers involved in the investigation was so overwhelming, that the outcome would have been the same anyway.  Proof of petitioner's drug trafficking and his possession of the gun in furtherance of it was so conclusive, any possibility of prejudice was negated."  ([Crim. Doc. 152 / Civ. Doc. 6] at 25).

Accordingly, the petitioner has failed to establish an ineffective assistance of counsel claim based upon counsel's failure to stipulate to, or move to severe, his felon in possession charge.

### 3.    Failure to Investigate Background of Confidential Informant or Request Mission Witness Instruction

Third, the petitioner argues that his counsel was ineffective for failing to investigate the background of the confidential informant or request a missing witness instruction when the Government failed to call the informant to testify.  Specifically, the petitioner argues that

"any competent attorney would have sought to interview the CI . . . [because] the information that was used to obtain the warrant proved to be unreliable as no guns were found in the motel room nor the cache of drugs alluded to.  Moreover, when viewed from the context that [the petitioner's girlfriend] testified that the CI was probably the one who left the drugs in [his] motel room . . . it was . . . incumbent upon counsel to have interviewed the CI the only person with relevant knowledge of underlying facts."  ([Crim. Doc. 130-1] at 13).

The petitioner has failed to establish that counsel's failure to investigate the background of the confidential informant was unreasonable.  The Government is required to disclose the identity of a confidential informant only where the informant is an actual participant in the investigation and thus a potential witness of the material and relevant events.  *See **McLawhorn v. North Carolina***, 484 F.2d 1, 11-12 (4th Cir. 1973).  However, where the informant is a "mere tipster," who only supplies a lead to law enforcement officers, disclosure is not required.  *Id.* at 11.  Here, the confidential informant was a "mere tipster" who provided the information for the limited purpose of forming the probable cause necessary to obtain a search warrant.  Thus, the Government was not required to disclose the confidential informant's identity.  Without the identity, counsel's performance cannot be deemed unreasonable because he failed to investigate the informant's background.

Likewise, the petitioner has failed to establish that counsel's failure to request a missing witness instruction was unreasonable.  Because the confidential informant was a "mere tipster," he or she cannot be characterized as a "missing witness."  Therefore, counsel's failure to request a missing witness instruction was not unreasonable.

Accordingly, the petitioner has failed to establish an ineffective assistance of counsel

claim based upon counsel's failure to investigate the background of the confidential informant or request a missing witness instruction when the Government failed to call the informant to testify.

### 4. Failure to Challenge Amount of Drugs Attributable to Petitioner

Fourth, the petitioner argues that his counsel was ineffective for failing to challenge the amount of drugs attributable to him. In particular, the petitioner argues that the "very laboratory report [of the drug analysis in his case] provided the government conclusively shows that the product allegedly recovered from [him] also contained Hydroxine. For sentencing purposes the 'hydroxine' should have been subtracted from the total weight of the material . . .. A review of . . . the record includes no expert testimony that a mixture of cocaine base and 'hydroxine' could be smoked," and therefore, the "government failed to sustain their burden of proof that a mixture of cocaine base and hydroxine could be smoked." ([Crim. Doc. 130-1] at 21). The petitioner contends that his counsel was ineffective for failing to challenge the drug amount. This contention, however, is procedurally barred.

On direct appeal, the Fourth Circuit specifically held that the finding as to the amount of drugs attributable to the petitioner was not clearly erroneous. (See [Crim. Doc. 92] at 4). Without error, the petitioner cannot show that counsel was ineffective.

In addition, the petitioner's argument that "the 'hydroxine' should have been subtracted from the total weight of the material" is legally incorrect. The United States Sentencing Guidelines provide that "[u]nless otherwise specified, the weight of a controlled substance set forth in the [Drug Quantity Table] refers to the _entire weight of any mixture or substance containing a detectable amount of the controlled substance_." U.S.S.G. §

17

2D1.1, Drug Quantity Table, Note A (2010) (emphasis added). Because that provision was also in place at the time of the petitioner's sentencing, counsel could not have been deficient for failing to challenge the Court's drug amount finding on the basis that the weight of an uncontrolled substance should be subtracted from the weight of a controlled substance. For this reason also, the petitioner cannot show that counsel was ineffective.

Accordingly, the petitioner has failed to establish an ineffective assistance of counsel claim based upon counsel's failure to challenge to amount of drugs attributable to him.

### 5. Failure to Object to Trial Attire

Fifth, the petitioner argues that his counsel was ineffective for not objecting to his appearing at trial dressed in jail clothing covered only in a blue blazer. In support of this claim, the petitioner provides his mother's affidavit wherein she states that "as a direct and proximate cause of counsel's failure to advise Affiant as to the date of the trial Affiant was unable to provide [the petitioner] with suitable clothing to proceed to trial before a jury instead of jail clothing." ([Crim. Doc. 130-1] at 8). This Court disagrees.

First, this Court has already rejected the petitioner's claim that counsel's alleged ineffectiveness caused his mother's failure to appeal at trial. For those same reasons, this Court again rejects the argument as characterized here. Second, even assuming counsel was ineffective, the petitioner cannot show that he was actually prejudiced in light of his own failure to raise the issue of his trial attire in his *pro se* supplemental appellate brief.

Accordingly, the petitioner has failed to establish an ineffective assistance of counsel claim based upon counsel's failure to object to his trial attire.

### 6. Failure to Object to Statements of Court before Jury Selection

Sixth, the petitioner argues that his counsel was ineffective for failing to object to the

18

emphasized statement made by the Court in the following introduction prior to jury selection:

> I'm here in this courtroom temporarily. You, the citizens, own it. And the Government is asking you to come out here today, first in the criminal case, to decide whether or not the individual placed upon trial before you should have his liberty or property taken from him. That's the criminal case in a nutshell. *We're going to decide guilt beyond a reasonable doubt of the criminal charges against this individual.*
>
> As we conclude with the criminal case, we will then be selecting a civil case. This is a little bit different. The individuals in that particular instance have a dispute over who caused damages. They aren't resulting to fist to cuffs [sic] or shooting at one another or using truck bombs to settle old scores. They are asking some citizens of their own community to hear each side and reach a decision.
>
> So please bear with me. I know that this area of the state is growing, and when I first came over here ten years against as a Federal Judge, I could say this and nobody would bat an eyelash. But more recently when I mention California or New York, there's probably somebody in the audience who have [sic] the experience of living in a major metropolitan area. But I like to say it this way, it is West Virginia. We're not going to mess around. This isn't going to be six month jury selection and a year long trial. We're going to try to get the criminal case selected in about an hour, take a break for those 12 [jurors], continue with the jury selection in the other case, and probably have the criminal case concluded and to you by late afternoon. We're going to try to be very efficient with that.
>
> That having been said, we will start.

([Crim. Doc. 83] at 5-6) (emphasis added). Specifically, the petitioner argues that his counsel was ineffective for failing to object to the Court's statement, "We're going to decide guilt beyond a reasonable doubt of the criminal charges against this individual." (Id.). This Court disagrees.

The petitioner has failed to establish that counsel's failure to object to the Court's statement was unreasonable. The Court was merely informing the jury that it was their job to decide *whether* the petitioner was guilty beyond a reasonable doubt. The Court was not

pronouncing the petitioner's guilt. Counsel cannot be found deficient for failing to object when there was no basis to do so. Accordingly, the petitioner has failed to establish an ineffective assistance of counsel claim based upon counsel's failure to object to the emphasized statement in the Court introduction prior to jury selection.

### 7. Failure to Move to Suppress Evidence Recovered from Warrantless Search of Vehicle

Seventh, the petitioner argues that his counsel was ineffective for failing to move to suppress the evidence recovered from a warrantless search of his vehicle. According to the petitioner, "counsel should have moved to suppress the fruits of the vehicle search" because his consent to the search "was obtained without [him] being advise [sic] of his *Miranda* rights." ([Crim Doc. 130-1] at 22). This Court disagrees.

A careful review of the trial record and the governing law reveals that the petitioner has failed to establish that counsel's failure to move to suppress the evidence recovered from his vehicle was unreasonable. An individual may waive his right to a lawyer or his right to remain silent under *Miranda v. Arizona*, 384 U.S. 436 (1966) as long as that waiver is knowing and voluntary. *See* *North Carolina v. Butler*, 441 U.S. 369 (1979); *Moran v. Burbine*, 475 U.S. 412 (1986); *Colorado v. Connelly*, 479 U.S. 157 (1986). Moreover, law enforcement officers may make a warrantless search if they receive the voluntary consent of the individual whose premises, effects, or person are to be searched. *See* *United States v. Watson*, 423 U.S. 411 (1976); *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

According to the investigating officer in the instant case, the petitioner was advised of his right to remain silent, waived that right, and verbally consented to the search of his

rental vehicle during a custodial interview at the Charles Town Police Department:

> A. Once he was taken back to the police department, I told him basically that we were executing the search warrant, the reason for the search warrant. Also advised him that he didn't have to say anything. That if he wished, he could remain silent. And basically apprised him of the situation. Let him know that he didn't have to say anything if he didn't want to.
>
> . . .
>
> Q. When you were interviewing Mr. Drew, did you ask him about his automobile?
>
> A. I did.
>
> Q. What did he say in that regard?
>
> A. Again, he was very candid, very forthright, had no problems talking. And we let him know that there was a set of rental keys that were on the table in the room. This was information that was being relayed to me from the search team. Also let him know that the vehicle that was sitting outside was listed as belonging to Number 67. When the room was rented, that vehicle was declared to being [sic] the vehicle that was going to be in the parking lot. This was conveyed to him. And, you know, he was advised that we intended to search it. And again he advised there is nothing in there and gave us verbal consent to search it.

([Crim. Doc. 83] at 121-123, 138-139). On cross-examination, the investigating officer again stated that the petitioner consented to the search of his vehicle. (Id. at 147-148). Upon a careful review of the record, this Court finds both that the petitioner knowingly and voluntarily waived his right to remain silent and that the petitioner voluntarily consented to the search of his vehicle. Thus, a motion to suppress would have been rejected as unsupported in fact and law. As such, counsel's decision not to make the motion cannot be characterized as unreasonable.

Accordingly, the petitioner has failed to establish an ineffective assistance of counsel claim based upon counsel's failure to move to suppress the evidence recovered from a warrantless search of his vehicle.

**C.      Ground 5: Ineffective Assistance of Appellate Counsel**

In his petition, the petitioner argues that his appellate counsel was ineffective for failing to raise his first four grounds on appeal.  In the R&R, the magistrate judge rejected the petitioner's argument, finding that appellate counsel could not have been ineffective for failing to raise meritless claims.  The petitioner objects.

Like the magistrate, this Court has rejected the petitioner's first four grounds as without merit and procedurally barred.  As such, the petitioner has failed to establish that his appellate counsel's decision not to raise meritless arguments on appeal was unreasonable. Accordingly, the petitioner's ineffective assistance of appellate counsel claim must fail.

IV.    Conclusion

Upon careful review of the R&R, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Crim. Doc. 152 / Civ. Doc. 6]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in that report.  Further, the petitioner's Objections **[Crim. Doc. 158]** are **OVERRULED**.  Accordingly, the petitioner's Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody  **[Crim. Doc. 130 / Civ. Doc. 1]** is hereby **DENIED** for the same reasons as stated above.  As such, the same is hereby **DISMISSED WITH PREJUDICE** and **ORDERED STRICKEN** from the active docket of this Court.  Finally, upon an independent review of the record, this Court hereby **DENIES** a certificate of appealability, finding that

the petitioner has failed to make "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* petitioner.

**DATED:** June 2, 2011.


JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE